UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| FRONTIER PAPER AND PACKAGING, INC., | ) ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1485-SEB-JPG |
| | ) | |
| E & S PAPER CO. d/b/a DELTA PACKAGING PRODUCTS, INC., et al., | ) ) | |
| Defendants. | ) | |

**AMENDED ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
FOR LACK OF PERSONAL JURISDICTION**

Before the Court are three separate Motions to Dismiss for Lack of Jurisdiction

filed by three of the seven co-Defendants, specifically, E & S Paper Co. d/b/a Delta

Packaging Products, Inc. ("Delta"), Washington Packaging Supply, Inc. ("WPI"), and

Insulated Products Corporation d/b/a Insulated Packaging, Inc. ("IPC") (collectively,

"Defendants").[1]  Plaintiff Frontier Paper and Packaging, Inc. (" Frontier") filed its

Amended Complaint on October 10, 2006, alleging that defendants[2] have infringed and

---

[1] On December 5, 2006, Delta filed a Motion to Dismiss for Lack of Jurisdiction and, in the alternative, Motion to Sever and Transfer Venue. [Docket No. 21].  On January 26, 2007, WPI filed a Motion to Dismiss for Lack of Jurisdiction. [Docket No. 61].  And on February 9, 2007, IPC filed a Motion to Dismiss for Lack of Jurisdiction. [Docket No. 66].

[2] Frontier brought this patent infringement action against seven separate defendants: E & S Paper Co. d/b/a Delta Packaging Products, Inc. ("Delta") Summit Packaging, Inc. ("Summit"), Washington Packaging Supply, Inc. ("WPI"), Reflectix, Inc. ("Reflectix"), Innovative Energy, Inc., ("Innovative Energy"), Poly Packaging, Inc. ("Poly Packaging") and Insulated Products Corporation d/b/a Insulated Packaging Inc. ("IPC").

will continue to infringe Frontier's patents[3] by making, using, offering for sale, selling, and distributing insulated liner products.  See Docket No. 5.  Of the original seven defendants, only Delta, IPC, and WPI have filed Motions to Dismiss for Lack of Jurisdiction and, in the Alternative, Motion to Sever and Transfer Venue.

We address these three motions to dismiss together because they raise the same questions of law and have virtually identical facts.  Defendants contend that they should be dismissed from this cause of action, pursuant to Federal Rule of Civil Procedure 12(b)(2) or 12(b)(3), because this court lacks personal jurisdiction over them and venue in this court is improper.  In the alternative, Delta and IPC request transfer of their cases to the Central District of California, and WPI requests transfer to the Western District of Washington.  Frontier argues that this court does have personal jurisdiction over Defendants and that transfer would be inappropriate.  For the reasons detailed in this entry, we GRANT Delta, WPI, and IPC's Motions and dismiss each of these Defendants for lack of personal jurisdiction.

### *Factual Background*

#### *Delta*

Defendant Delta is a California packaging products company with its principal place of business in Los Angeles, California.  Pritikin Decl. ¶ 2.  Delta is not registered to conduct business in Indiana and has no registered agents, employees or representatives located in Indiana.  Pritikin Decl. ¶ 3.  Also, Delta has never maintained an office, branch,

---

[3] The patents at issue are United States Patents Nos. 5,820,268; 6,007,467; 6,080,096; and 7,021,524.  Compl. ¶¶ 6-9.

affiliated entity, warehouse, or facility of any kind in Indiana, and has never paid taxes in

Indiana.  Id.  Delta has never entered into any contracts in Indiana.  Id.  Delta has never

had a telephone number or fax number listed in Indiana, nor does it have a mailing

address in the State of Indiana.  Id.  Further, Delta has no bank accounts in Indiana and

owns no real or personal property in Indiana.  Id.

      Delta maintains an informational website which provides contact information and

brief descriptions of its products.  Pritikin  Decl. ¶ 7 and see Delta Ex. 1.  The website has

no interactive features; thus, customers can neither order products via Delta's website nor

can they directly e-mail Delta through a direct link provided on the website.  Id.

      Delta is a distinctly separate entity unrelated to any of the co-defendants in the

present action.  Pritikin Decl. ¶ 8.  No business activities or joint cooperation involving

the allegedly infringing products have occurred between Delta and any of its co-

defendants.  Id.  Delta independently designs, develops, markets and sells its accused

products, which are unconnected to and potentially competing with each co-defendant's

products.  Id.  Delta designs, develops and manufactures all of its products within the

Central District of California.  Pritikin Decl. ¶ 9.  Delta's product catalogs are created in,

and its ordering mechanisms are hosted in, the Central District of California.  Id.  The

development, manufacturing, marketing, distribution and sales decisions concerning

Delta's accused products were conducted in California.  Id.

      Delta asserts that all potential witnesses, as well as almost all of the business and

financial records and documents relating to design, development, manufacturing,

advertising, promotion, marketing, and sales (such as invoices and shipping records) of

Delta's accused products are located in the Central District of California, except for a five-page research and development document located in Michigan.  Pritikin Decl. ¶ 12. Delta has no business or financial records or documents of any kind created, stored or maintained in Indiana.  Id.

Delta contends that it does not direct or target any advertising or marketing efforts at or towards Indiana.  Pritikin Decl. ¶ 4.  It has never sold any of its products in Indiana nor does it have any customers in Indiana.  Id. ¶ 5.  Delta has no established distribution channel in place to fulfill orders, if there ever were orders, within the State of Indiana.  In addition, no officers or employees of Delta have ever traveled to Indiana to conduct company business or trade shows.  Id. ¶ 6.

Frontier, on the other hand, asserts that Delta would do or does in fact do business in Indiana.  For example, in March of 2006, the president of Frontier, James Branham, contacted Delta in California from Indianapolis to request a sample of their product. Branham Delta Decl. ¶ 6.  In the phone conversation with the Delta representative, Richard Hemmer, Mr. Branham said that his name was Mike Branham and that he was affiliated with "Cappy Goat Cheese."  Id.  Mr. Branham stated that "Cappy Goat Cheese" was looking for a shipping container which would enable him to send his product from "here in the Midwest" to various locations throughout the country.  Id.  Mr. Hemmer responded by telling Mr. Burnham about Delta's products and complied with Mr. Branham's request to send a sample of the product along with some additional product information.  Id.  Frontier points out that during their conversation, Mr. Hemmer never mentioned to Mr. Burnham that Delta lacked distribution centers in Indiana, that an

allowance of extra-time for shipment might be necessary, or the handling of any future orders by Delta for Mr. Burnham's fictitious company would be a problem for Delta.  Id. On March 21, 2006, Mr. Burnham received from Delta in California at his home in the Indianapolis area the requested sample of Delta's product, literature on the product, and an unsolicited price quote.  Branham Delta Decl. ¶ 7.


***WPI***

WPI is a Washington packaging supply company, incorporated in Washington, with its principal place of business in Seattle, Washington.  Lauzen Decl. ¶ 2.  WPI is not registered to conduct business in Indiana, and has no registered agents, employees or representatives in Indiana.  Lauzen Decl. ¶ 3.  Further, WPI does not, and has never, maintained an office, branch, affiliated entity, warehouse or facility of any kind in Indiana, and has never paid taxes in Indiana.  Id.  WPI alleges that it has never had any business contact whatsoever with the State of Indiana.

WPI has never directed any advertising at or towards Indiana, and does not target Indiana with any of its marketing efforts or campaigns.  Lauzen Decl. ¶ 5.  It does not sell, and has not sold, any of its products in Indiana, and has no customers in Indiana. Lauzen Decl. ¶ 6.

WPI maintains an informational website, which does not interact directly with customers who may seek to obtain samples or to place orders.  Lauzen Decl. ¶ 8.  All of the design, manufacture and shipping of WPI's products occurs in western Washington state.  Lauzen Dec. ¶ 10.  All of WPI's employees who might have discoverable

information in this litigation live in the western Washington area, and its accounting is also done in western Washington.  Lauzen Dec. ¶ 13.

Frontier asserts that WPI would do or does in fact do business within Indiana.  For example, in March of 2006, the president of Frontier, James Branham, called WPI, in Washington, under the guise of being an employee of "Cheese Farms, Inc." to request a sample of WPI's product.  Branham WPI Decl. ¶ 6.  An employee of WPI, located in the state of Washington, took down Mr. Branham's information and a WPI representative, Dan Roach, returned Mr. Branham's call to Indiana.  Id.  Mr. Branham explained to Mr. Roach that he was looking for shipping container which would enable him to send his product from "here in the Midwest" to various locations throughout the country.  Id.  Mr. Roach responded by describing WPI's temperature-sensitive packaging products and agreed to send Mr. Branham a sample and some product literature.  Id.  Mr. Branham also asked about any problems WPI might have with shipping to a customer in the Midwest, to which Mr. Roach responded that there would be no problem.  Id.  Mr. Roach never mentioned to Mr. Burnham that WPI lacked distribution centers in Indiana, required extra-time for shipments because of the distance, or would have any difficulties filling future orders from Mr. Burnham's fictitious company.  Id.  On March 21, 2006, Mr. Burnham received from WPI in Washington at his home, in the Indianapolis, Indiana area, a sample of WPI's product, literature on the product, and an unsolicited price list which included prices for products unrelated to the requested product, such as pallet covers and foil rolls.  Branham WPI Decl. ¶ 7.

*IPC*

IPC is a California packaging supply company having its principal place of business in Los Angeles, California.  Veiseh Decl. ¶ 2.  IPC is not registered to conduct business in Indiana and has no registered agents, employees, or representatives located in Indiana.  Id. ¶ 3.  IPC has never maintained an office, branch, affiliated entity, warehouse, or facility of any kind in Indiana, and has never paid taxes in Indiana.  Id. ¶ 3.  IPC has never entered into any contracts in Indiana.  Id. ¶ 6.  IPC has never had a telephone number or fax number listed in Indiana, nor does it have a mailing address in Indiana.  Id. ¶ 4.  Additionally, IPC has no bank accounts in Indiana and owns no real or personal property in Indiana.  Id. ¶ 4.  IPC has not been involved in any prior lawsuits in Indiana. Id. ¶ 4.

IPC does not direct any advertising at or towards Indiana, nor does it target Indiana with any marketing efforts or campaigns.  Veiseh Decl. ¶ 5.  IPC maintains an informational website with contact information, brief descriptions of its products, testing procedures, and distribution availability.  Veiseh Decl. ¶ 8 and see IPC Ex. 1.  Through the website, e-mails can be sent to IPC; however, orders and requests for samples are not solicited.  Id.

IPC is an entity distinct from and unrelated to the other co-defendants in the case at bar.  Veiseh Decl. ¶ 9.  IPC alleges that there have never been any business activities or cooperation involving or relating to the allegedly infringing products between IPC and any of the co-defendants.  IPC independently designs, develops, markets, and sells its accused products, which are distinguishable from and potentially competing with each of

the co-defendants' products.  Id. ¶ 10.

All potential witnesses, and all business and financial records and documents relating to the design, development, manufacturing, advertising, promotion, marketing, and sales (such as invoices and shipping records) of IPC's accused products are located in the Central District of California.  Id. ¶ 14.  Specifically, Charles Veiseh, a corporate officer for IPC residing in Los Angeles, is the person most familiar with discoverable information regarding IPC's research, development, manufacturing, marketing, and sales of its accused products.  Id. ¶ 1.

IPC has never sold any of its products in Indiana.  Id. ¶ 6.  IPC has no customers located in Indiana.  Id. ¶ 6.  IPC has not established a distribution channel to fulfill orders from Indiana.  Id. ¶ 10.  No officers or employees of IPC have ever traveled to Indiana for IPC's business purposes or trade shows.  Id. ¶ 7.

Based on information discovered on IPC's website, Frontier alleges that IPC does, in fact, provide services within Indiana.  For example, Frontier asserts, IPC is an international company doing business throughout the United States.  Knight Decl. ¶ 3. Further, IPC's website does not indicate that it does not distribute to or provide service within Indiana.  Id. ¶ 3.

***Procedural History***

Frontier commenced this action on October 10, 2006, based on the alleged patent infringement by seven corporate defendants (Delta, WPS, IPC, Summit, Reflectix, Innovative Energy, and Poly Packaging).  On January 24, 2007, Innovative Energy filed a

Stipulation of Dismissal between itself and Frontier, which the Court approved on February 14, 2007.  On February 9, 2007, Defendants Reflectix and Poly Packaging filed a Stipulation of Dismissal between themselves and Frontier, which the Court also approved on March 2, 2007.

Now before the Court are the motions of three remaining Defendants, each of whom seeks to have this action dismissed on personal jurisdiction grounds, pursuant to Rule 12(b)(2).[4]

## *Legal Analysis*

### I.    *Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is found to be lacking.  When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003).  When a district court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a prima facie case of personal jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." Id. (internal citations omitted).

Federal Circuit legal interpretations govern personal jurisdiction issues in patent

---

[4] Defendant corporation, Summit, has not challenged jurisdiction in this court.

infringement cases.  See Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir.

2002).  That court has held that a district court may properly exercise personal

jurisdiction over a non-resident defendant if a two-step analysis is undertaken and

satisfied.  First, the party resisting the exercise of jurisdiction must be amenable to service

of process under the state's long-arm statute; and second, the exercise of personal

jurisdiction must comport with the Due Process Clause of the Constitution.  Id.  Because

Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), "expand[s] personal

jurisdiction to the full extent permitted by the Due Process Clause" (LinkAmerica Corp.

v. Albert, 857 N.E.2d 961, 966 (Ind. 2006)),  the sole question before us is whether Due

Process requirements would be offended were we to exercise personal jurisdiction over

Defendants in this case.

        For a court to acquire personal jurisdiction over a defendant, due process requires

"that the defendant have such 'minimum contacts' with the forum state as will make the

assertion of jurisdiction over him consistent with 'traditional notions of fair play and

substantial justice[.]'"  Lakeside Bridge & Steel Co. v. Mountain State Const. Co., 597

F.2d 596, 600 (7th Cir. 1979), quoting International Shoe v. Washington, 326 U.S. 310,

316 (1945.  In other words, a defendant must have "fair warning that a particular activity

may subject them to the jurisdiction of a foreign sovereign." Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 472 (1985), quoting Shaffer v. Heitner, 433 U.S. 186, 218

(1977) (Stevens, J., concurring in judgment).

        Personal jurisdiction may be either specific or general.  A court exercises specific

jurisdiction over a defendant where the cause of action arises out of or relates to a

defendant's purposefully established contacts with the forum state. <u>Helicopteros Nacionals de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 414 (1984); <u>Burger King Corp.</u>, 471 U.S. at 472. General jurisdiction, however, "is proper when a defendant has 'continuous and systematic business contacts' with a state and it allows a defendant to be sued in that state regardless of the subject matter of the lawsuit." <u>Premiere Credit of North America, LLC v. AAT Fabrication, Inc.</u>, 2005 WL 1123636, *2 (S.D. Ind. May 5, 2005), citing <u>Helicopteros</u>, 466 U.S. at 416; <u>see also</u> <u>Hyatt Int'l Corp. v. Coco</u>, 302 F.3d 707, 713 (7th Cir. 2002); <u>RAR, Inc. v. Turner Diesel, Ltd.</u>, 107 F.3d 1272, 1277 (7th Cir. 1997). Frontier asserts that this court has specific jurisdiction over Delta and WPI and general jurisdiction over IPC.

"Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." <u>Burger King</u>, 471 U.S. at 472-473. The due process requirements for specific jurisdiction were recently summarized in <u>U.S. Schools of Golf, Inc. v. Biltmore Golf, Inc.</u>:

> For specific jurisdiction in a case of this type, due process requires that a non-resident defendant must have established its contacts with the forum state by purposefully availing itself of the privilege of conducting business there. This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. In other words, a defendant's conduct and connection with the forum state should be such that it should reasonably anticipate being haled into court there.

2005 WL 3022005, *4 (S.D. Ind. Nov. 10, 2005) (J. Hamilton) (internal quotations and citations omitted).

The constitutional requirement for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction.  United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997) ("[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction.").  "[The] contacts [required for general jurisdiction] must be so extensive to be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in any litigation arising out of any transaction or occurrence taking place anywhere in the world."  Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir. 2003).

When, as here, a case involves multiple defendants, personal jurisdiction must be assessed separately as to each defendant; the plaintiff may not treat the defendants collectively.  See Rush v. Savchuk, 44 U.S. 320, 331-32 (1980) (holding that the aggregation of multiple defendants' forum contacts for purposes of personal jurisdiction analysis is "plainly unconstitutional," and noting that, though "the parties' relationship with each other may be significant in evaluating their ties to the forum[, jurisdictional] requirements . . . must be met as to each defendant").  Thus, our analysis shall proceed as to each defendant individually.

## A. Delta

Delta asserts that this action must be dismissed as to it for lack of personal jurisdiction because it has not established minimum contacts with Indiana and an assertion of jurisdiction would be neither reasonable nor fair.  Delta Mem. at 4.  Delta points to the lack of "continuous and systematic" contacts with Indiana to substantiate that it cannot be subjected to the general jurisdiction of this court.  Frontier does not dispute this point, but instead argues that Delta is subject to specific jurisdiction.

Delta responds that specific jurisdiction is also lacking in this district.  The three-pronged minimum contacts test for determining if specific jurisdiction exists considers: "(1) whether the defendant purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair."  3d Systems, Inc. v. Aarotech Laboratories, Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998).  Using the above test, Delta states that: first, it has not purposefully directed any activities at residents of Indiana; second, Frontier's patent infringement claims against Delta do not arise out of or relate to Delta's activities in Indiana; and third, the exercise of jurisdiction over Delta would be unreasonable.  Delta maintains that its lack of sales, marketing, customers and distribution channels in Indiana is proof that it has not purposely directed its activities towards the residents of Indiana.

Delta also asserts that it is impermissible to exercise specific jurisdiction due to the maintenance of a passive website.  U.S. Schools of Golf, Inc. v. Biltmore Golf, Inc., 2005 WL 3022005, *4 (S.D. Ind. Nov. 10, 2005); Jennings v. AC Hydraulic A/S, 383 F.3d 546,

549-550 (7th Cir. 2004) (holding that a defendant's website was passive since "it provided only contact information and descriptions of its various product lines but did not enable customers to order products online.").  Delta asserts that its website has no place for customers to order or directly interact with the company but, instead, the site is purely informational with descriptions of its product line and contact information without a direct e-mail link.  See Delta Ex. 1.  In summary, Delta argues that it has not purposefully directed any activities at the residents of Indiana and therefore this court cannot conclude that it has specific jurisdiction over Delta under the first prong of the three-pronged test.

Frontier responds, pointing out the March 2006 phone conversation, subsequent sample product shipment, and the unsolicited price quote by Delta are evidence that Delta has in fact directed its activities towards Indiana residents.  According to Mr. Branham, during this March 2006 phone conversation, Delta stated that it would sell its temperature sensitive packaging to an Indiana customer and that it would ship the requested sample product and literature to Indiana as well.  Branham Delta Decl. ¶ 6.  Frontier continues, arguing that, even though Delta maintains that it does not have a distribution channel in place to fill orders in Indiana, this did not deter the company from offering to sell to an Indiana customer or giving a competitive price quote.

Mr. Branham, Frontier's president, also states that before his contact with Delta in March of 2006, he reasonably believed that Delta did business in Indiana which belief was confirmed by Delta's shipment of the product sample and price quote.  Branham Delta Decl. ¶¶ 5-7.  Additionally, Frontier asserts that Delta directs its activities towards Indiana residents by attending trade shows in Chicago and having customers in the

Chicago area.

Based on our review of the evidence and arguments adduced by the parties, we
conclude that an exercise of specific jurisdiction over Delta would not be reasonable
because no action by Delta constitutes the purposeful direction of any of its activities at
the residents of Indiana.  "In determining whether the defendant purposefully availed
itself of a particular forum for purposes of the Fourteenth Amendment, courts in this
circuit have considered whether the defendant solicited the transaction in question within
the proposed forum."  Federated Rural Electric Insurance Corp. v. Inland Power and
Light Co., 18 F.3d 389, 394 (7th Cir. 1994); see also Edberg v. Neogen Corp., 17 F.
Supp. 2d 104, 112 (D. Conn. 1998).  In other words, a non-resident defendant, not a
plaintiff, must have purposefully established contact with the forum.  It was contact with
Indiana by plaintiff, Frontier, rather than the non-resident defendant, Delta, that occurred
here.  The convincing force of Frontier's contention that the March 2006 phone
conversation and subsequent sample product shipment to Indiana proves that Delta directs
its activities at the residents of Indiana is undermined by the acknowledgment by Mr.
Branham, Frontier's president, that it was he who initiated the phone conversation and
solicited the sample product transaction with Delta in March 2006.  Frontier Delta Mem.
at 2.; Branham Delta Decl. ¶ 6.  Because the contact was initiated and a transaction
invited by Plaintiff, rather than by Delta, the non-resident defendant, that contact does not
suffice as proof that defendant purposefully availed itself of this specific forum.

Frontier's claim that Delta directs its activities towards Indiana is also based on
Mr. Branham's reasonable belief that Delta sold its products in Indiana, that Delta attends

trade shows in Chicago, and Delta representative's failure to mention any lack of shipping channels or infrastructure in the March 2006 phone conversation.  A plaintiff's reasonable belief that a company does business in the forum state and a defendant's failure to mention a lack of shipping channels to a potential client by a representative are inconsequential factors, clearly not a sufficient basis for the Court to hold that Delta is directing its activities at or towards Indiana.

Delta, a California company with its principal place of business in Los Angeles, California, it is not registered to do business in Indiana.  Delta Mem. at 1; Pritikin Decl. ¶¶ 2, 3.  Delta has directed none of its operational and marketing activities towards the state nor has it sold any of its products in Indiana.  Delta Mem. at 2-3.  None of Delta's operations, buildings, employees, bank accounts or products are located within Indiana.  Delta Mem. at 2-3.  Therefore, this court lacks a proper basis on which to exercise specific jurisdiction over Delta.  We hold that Delta does not direct its activities toward the State of Indiana and further that Frontier's claim does not arise out of or relate to Delta's deminimus activities in Indiana.

Under these circumstances, any assertion of personal jurisdiction by this court over Delta would be unreasonable and would not comport with Due Process standards.  See, 3d Systems, 160 F.3d at 1378.  We therefore GRANT Delta's Motion to Dismiss for Lack of Jurisdiction.


**B. WPI**

WPI also asserts that this case must be dismissed as to it for lack of personal

jurisdiction because it has no contacts with Indiana that would support an exercise of jurisdiction.  WPI Mem. at 3.  WPI shares many factual similarities with Delta and therefore adopts substantial portions of Delta's briefing as its own.  WPI Mem. at 3. Frontier argues that WPI is subject to the specific jurisdiction of this court based on the fact that WPI purposefully directed business activities to Indiana residents in a March 2006 telephone conversation with Frontier's representative and subsequently shipped a sample to Mr. Branham's home in Indianapolis in response to Branham's request. Frontier Resp. at 3.

However, WPI, like Delta, did not purposefully establish contact with Indiana, since it was Plaintiff, Frontier, who unilaterally initiated contact with WPI during the March 2006 phone conversation.  Branham WPI Decl. ¶ 6.  The product sample requested of WPI  by Mr. Branham for his fictitious company, "Cheese Farms, Inc.", during the March 2006 phone conversation with WPI's representative, Dan Roach, was the only sample sent by WPI to anyone within Indiana.  Lauzen Decl. ¶¶ 3-14.  As discussed above, contact initiated and business solicited by a plaintiff, rather than a non-resident defendant, cannot provide a sufficient basis on which to conclude that the defendant purposefully availed itself of a particular forum.  Therefore, the March 2006 phone conversation and subsequent product sample shipment instigated by Mr. Branham, is of no legal consequence in Frontier's attempt to establish that WPI directs its activities to Indiana residents.

WPI attests in its Memorandum in Support of its Motion to Dismiss that it has had no other contacts with nor has it directed its activities in any way towards Indiana.  See

WPI Mem. at 2-4.  As a Washington company with its principal place of business in Seattle, it has not registered to do business in Indiana.  WPI Mem. at 3; Lauzen Decl. ¶ 2. The evidence establishes without controversy that WPI does not have, nor has it ever had, an office, facility, employees or customers in Indiana.  WPI Mem. at 2; Lauzen Decl. ¶¶ 3,6.  WPI also has never directed any advertising or marketing campaigns towards Indiana.  WPI Mem. at 2; Lauzen Decl. ¶ 5.  WPI's non-interactive, passive informational website does not constitute a jurisdictional contact because it does not accommodate customers who wish to place orders or sample requests.  WPI Mem. at 2.; Lauzen Decl. ¶ 8.  As stated previously, a passive website which contains contact information and descriptions of its various product lines but does not enable customers to order products online does not suffice as evidence that WPI purposefully directs its activities at the residents of Indiana.  See Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-550 (7th Cir. 2004).

In conclusion, because Mr. Branham initiated the March 2006 transaction with WPI and there is no other evidence that WPI purposefully directed any activities at or towards the residents of Indiana, an exercise of specific jurisdiction over Delta is not reasonable and does not comport with Due Process standards.  We therefore GRANT WPI's Motion for Lack of Jurisdiction.


**C. IPC**

IPC asserts that this case against it must be dismissed due to a lack of personal jurisdiction because, like the other two co-defendants, IPC has no minimum contacts with

Indiana, making an assertion of jurisdiction neither reasonable nor fair.  IPC Mem. at 4.

Frontier does not dispute IPC's argument that it is not subject to specific jurisdiction but

argues instead that IPC is subject to general jurisdiction based on IPC's continuous and

systematic contacts with Indiana via an on-going "nationwide" business, including

through its website that declares to the public that IPC is willing to do business anywhere

in the nation.  Frontier IPC Mem. at 2.  Frontier asserts that the only instance in which

IPC publicly indicated that Indiana was an exception to the nation-wide reach of its

business was in its motion to dismiss for lack of jurisdiction.  According to Frontier, since

IPC conducts its operations on a nationwide basis, which necessarily includes Indiana, it

is reasonable and fair for this court to exercise general jurisdiction over IPC.

      IPC cites to the lack of "continuous and systematic" contacts with Indiana to

defeat Frontier's assertion of general jurisdiction in this forum.  IPC Mem. At 5.  IPC

contends that maintenance of a passive informational website does not suffice as a basis

for general jurisdiction.  U.S. Schools of Golf, Inc. v. Biltmore Golf, Inc., 2005 WL

3022005, *4 (S.D. Ind. Nov. 10, 2005); see IPC Ex. 1.  IPC also asserts that Federal

Circuit legal interpretations hold that mere access to its website by Indiana residents does

not establish a persistent course of business in Indiana for jurisdictional purposes.  Trintec

Indus., Inc. v. Pedre Promotional Prods., 395 F.3d 1275, 1281 (Fed. Cir. 2005).  In

addition, IPC argues that its contacts, if any, with Indiana, have not been "continuous and

systematic," which eliminates any possibility that general jurisdiction exists over it in this

district.  IPC Mem. at 5.

      After careful review of the evidence and arguments advanced by each side, we

conclude that an exercise of general jurisdiction over IPC would not be reasonable or consistent with Due Process standards because IPC lacks continuous and systematic contacts within Indiana.  IPC's passive informational website does not accommodate or process orders or product requests from the public, and it is well established that access to a low interactivity passive website, as defined by the court in Jennings, by Indiana residents will not suffice as basis for general jurisdiction. Veiseh Decl. ¶ 8; see U.S. Schools of Golf, Inc. v. Biltmore Golf, Inc., 2005 WL 3022005, *4 (S.D. Ind. Nov. 10, 2005); Trintec Indus., Inc. v. Pedre Promotional Prods., 395 F.3d 1275, 1281 (Fed. Cir. 2005);  Jennings v. AC Hydraulic A/S, 383 F.3d 546, 549-550 (7th Cir. 2004).  As for Frontier's claims that the statement on IPC's website that it does business "throughout the US and Worldwide" proves that IPC does business everywhere including Indiana, we conclude that this statement merely makes available business information to those who are interested and does not evidence actual, continuous or systematic contact within Indiana.

        While IPC concedes that a single phone call was placed by it to an Indiana resident regarding one of its products, such an isolated instance of communication, by itself, is inadequate, especially in light of the fact the contact did not result in the signing of a contract or the completion of a sale with an Indiana resident.  One phone call simply does not constitute continuous and systematic contact within Indiana.  Veiseh Decl. ¶ 6; See Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir. 2003).  Similarly, the maintenance of a passive informational website by IPC, does not constitute continuous and systematic contact within Indiana.  Therefore, we shall not

exercise general jurisdiction over IPC, and must <u>GRANT</u> IPC's Motion to Dismiss for

Lack of Jurisdiction.


## II.     *Motion to Sever and Transfer Venue*


### *Venue*

In addition to the Motion to Dismiss for Lack of Jurisdiction, all three Defendants

request they be dismissed based on their claims of improper venue, pursuant to Federal

Rule of Civil Procedure 12(b)(3).  Venue is improper, they say, because none of the

Defendants resides in Indiana and none therefore is subject to personal jurisdiction in

Indiana.  In patent infringement cases, a civil action "may be brought in the judicial

district where the defendant resides, or where the defendant has committed acts of

infringement and has a regular and established place of business." 28 U.S.C. § 1400(b)

(1999).  A corporation is deemed to reside in any judicial district in which it is subject to

personal jurisdiction at the time the action was commenced.  28 U.S.C. § 1391(c) (1999).

As discussed in detail above, no Defendant has a regular or established place of

business in Indiana.  Therefore, proper venue can only be based on a finding that each

Defendant is subject to personal jurisdiction here.  Because we have concluded that

personal jurisdiction is lacking and Defendants' Motions to Dismiss for Lack of

Jurisdiction must be granted for want personal jurisdiction, venue is not properly located

in this forum.  The motion to dismiss based on improper venue must and shall be

therefore granted as to each of these defendants.

*Transfer*

Defendants' final request is based on the interests of justice which dictate that plaintiff's claim of infringement against each of them be transferred, pursuant to 28 U.S.C. § 1404(a)[5] and §1338(a)[6], given that they have no connections to Indiana or to any other Defendant.[7]  Delta and IPC each argues that the proper place for trial of a patent infringement action against it is in the Central District of California - the location of the company, its employees, witnesses and documents.  WPI maintains that the infringement case against it should be transferred to the Western District of Washington which is where its business headquarters, employees, witnesses and documents all reside.  Frontier has not responded directly to these arguments in support of transfer, contending only that the Defendants should not be permitted to sever their claims and have them transferred in the interests of justice.  We find no impediment to Plaintiff's re-filing of its complaint in an appropriate forum where personal jurisdiction can be achieved over these defendants. Severance as well as transfer of these claims are therefore appropriate in the premises.

---

[5] "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (1999).

[6] "The district courts shall have all original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks."  28 U.S.C. § 1338(c) (1999).

[7] A Section 1404(a) transfer may be made despite the lack of personal jurisdiction in the transferor court.  See Cote v. Wadel, 796 F.2d 981, 984-985 (7th Cir. 1986).

### *Conclusion*

For the reasons detailed above, Delta's Motion to Dismiss for Lack of Jurisdiction and, in the Alternative, Motion to Sever and Transfer Venue is <u>GRANTED</u>; WPI's Motion to Dismiss for Lack of Jurisdiction and, in the Alternative, Motion to Sever and Transfer Venue is <u>GRANTED</u>; and IPC's Motion to Dismiss for Lack of Jurisdiction and, in the Alternative, Motion to Sever and Transfer Venue is <u>GRANTED</u>.  The claims against these three defendants accordingly are severed and shall be transferred.  IT IS SO ORDERED.

Date: _____06/22/2007_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Vincent J. Belusko
MORRISON & FOERSTER LLP
vbelusko@mofo.com

Spiro  Bereveskos
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
judy@uspatent.com

Quentin Gareth Cantrell
WOODARD EMHARDT NAUGHTON MORIARTY & MCNETT
qcantrell@uspatent.com

Jeeyeon  Han
TROJAN LAW OFFICE
han@trojanlawoffices.com

Teresa E. Knight

WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
tknight@uspatent.com

David M. Lockman
MAGINOT MOORE & BECK
dmlockman@maginot.com

Brian F. McMahon
MORRISON & FOERSTER LLP
bmcmahon@mofo.com

Harold C. Moore
MAGINOT MOORE & BECK
hcmoore@maginot.com

James W. Riley Jr.
RILEY BENNETT & EGLOFF LLP
jriley@rbelaw.com

Robert E. Rohde
ROHDE & VAN KAMPEN PLLC
brohde@rohdelaw.com

R. Joseph Trojan
TROJAN LAW OFFICES
trojan@trojanlawoffices.com

Stephen Lewis Vaughan
INDIANO VAUGHAN ROBERTS & FILOMENA
steve@iplawindiana.com

James Douglas Wood
MAGINOT MOORE & BECK
jdwood@maginot.com